IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MARIO PRIDGEN,<br>    Petitioner,<br><br>   v.<br><br>SHANNON,<br>THE DISTRICT ATTORNEY OF THE<br>COUNTY OF LANCASTER, and<br>THE ATTORNEY GENERAL OF THE<br>STATE OF PENNSYLVANIA,<br>    Respondents. | CIVIL ACTION<br><br><br><br>NO. 00-4561 |

DuBois, J.                                   May 12, 2014

**M E M O R A N D U M**

## I.  INTRODUCTION

    Petitioner, James Mario Pridgen, is currently serving a life sentence in Pennsylvania for his state conviction on a first-degree murder charge. Presently before the Court is Petitioner's 60(b) Motion Alleging a Defect in the Integrity of the Federal Habeas Corpus Proceedings ("60(b) Motion"). Petitioner argues that his Petition for Writ of Habeas Corpus Pursuant to § 2254, filed on September 8, 2000, should not have been dismissed as untimely because, under *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), his claims of actual innocence entitle him to an exception to the limitations period.

    Also before the Court are three motions filed by petitioner, all of which relate to proving the allegations set forth in his 60(b) Motion: (1) Motion for Expert Witness Funds and Exparte [sic] Hearing, (2) Motion for State Court Record, and (3) Motion for State Court Trial Transcripts and Preliminary Hearing. For the reasons set forth below, all of petitioner's Motions are denied.

**II.     BACKGROUND**

The facts of this case have been previously set forth in the opinions of this Court. *See, e.g.*, *Pridgen v. Shannon*, 2002 WL 31122131 (E.D. Pa. Sept. 26, 2002). Accordingly, the Court recounts in this Memorandum only those facts necessary to resolve the issues presently before the Court.

On May 23, 1996, following his conviction and sentencing for first-degree murder, petitioner filed his first application for post-conviction relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541, *et seq*. That PCRA petition was denied by the Court of Common Pleas, the denial was affirmed by the Superior Court, and on January 12, 1999, the Pennsylvania Supreme Court denied a petition for allowance of appeal.

While the PCRA appeal was pending in state court, on September 12, 1997, petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in federal court. By Order dated December 10, 1997, this Court approved and adopted the Report and Recommendation of United States Magistrate Judge Charles Smith and dismissed the Petition without prejudice on the ground that petitioner had failed to exhaust his state-court remedies.

Petitioner filed a second PCRA petition on February 22, 1999, which the state trial court dismissed as barred by the applicable one-year state statute of limitations. Petitioner appealed this decision to the Superior Court, which affirmed the dismissal of the petition as untimely. On June 20, 2000, the Pennsylvania Supreme Court denied a petition for allowance of appeal.

On September 8, 2000, petitioner filed a second Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court. By Report and Recommendation ("R&R"), Magistrate Judge Charles Smith recommended that the § 2254 Petition be dismissed as untimely under § 2244(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides a

one-year statute of limitations period following direct review in the state courts. 28 U.S.C. § 2244. Magistrate Judge Smith concluded that equitable tolling of the statute of limitations was inappropriate, noting that petitioner stated "no reason why he should not be bound by the statute of limitations." R&R, at 9 n.9 (Doc. No. 10, Nov. 28, 2000).

By Order dated December 13, 2000, this Court approved and adopted the Report and Recommendation of Magistrate Judge Smith, and denied and dismissed the Petition for Writ of Habeas Corpus as time-barred under AEDPA. On January 10, 2001, petitioner filed a request for a certificate of appealability with the U.S. Court of Appeals for the Third Circuit, which denied the request on October 31, 2001 because, "as explained by the Magistrate Judge, the appellant's habeas corpus petition was not timely filed." Order, at 1 (Doc. No. 29, filed Nov. 1, 2001).

Some twelve years later, on October 11, 2012, petitioner filed a motion under Federal Rule of Civil Procedure 60(b), arguing that the Court erred in its December 13, 2000, Order because the statute of limitations under the AEDPA should have been equitably tolled. Petitioner's argument for equitable tolling was based on the opinion of the U.S. Court of Appeals for the Third Circuit in *Lovasz v. Vaughn*, 134 F.3d 147 (3d Cir. 1998), which, petitioner claimed, instructed him to exhaust his state remedies and caused him to believe that his AEDPA filing period would be tolled during the pendency of his state proceedings. It was petitioner's position that *Lovasz* functioned as the "extraordinary circumstance" that prevented him from timely filing his federal habeas petitioner, such that he was entitled to equitable tolling of the AEDPA statute of limitations.

The Court dismissed and denied petitioner's October 11, 2012 60(b) motion, concluding that the motion, which sought relief twelve years after the issuance of the December 13, 2000 Order, was not brought within a reasonable time, as required by Rule 60(b). The Court also

denied petitioner's motion on the merits, concluding that the decision in *Lovasz* did not constitute extraordinary circumstances sufficient to warrant equitable tolling.

On August 7, 2013, petitioner filed the instant 60(b) Motion. In this Motion, petitioner argues that under *McQuiggin v. Perkins*, his actual innocence claims are entitled to an exception from the AEDPA's limitations period, and therefore the Court erred when it denied those claims as untimely in its December 12, 2000 Order.[1] Petitioner filed three additional motions related to this 60(b) Motion: (1) Motion for Expert Witness Funds and Exparte [sic] Hearing, (2) Motion for State Court Trial Transcripts and Preliminary Hearing, and (3) Motion for State Court Record. The Court addresses each motion in turn.

## III. DISCUSSION

### A. Rule 60(b) Motion

i. *Petitioner's 60(b) Motion Is Not a Second or Successive Habeas Petition*

When addressing a Rule 60(b) motion in a habeas case, the Court must first determine whether the motion is, in essence, a second or successive habeas petition. Such a ruling is required because the AEDPA requires a petitioner to obtain a certification from the court of appeals authorizing the district court to address a second or successive habeas petition. *See* 28 U.S.C. § 2244(b)(3). A Rule 60(b) motion will be construed as a successive habeas petition

---

[1] Petitioner also cites *United States v. Andrews*, 463 F. App'x 169 (3d Cir. 2012) (citing *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005)) for the proposition that an actual innocence claim is "an exception for" the equitable tolling of the AEDPA's limitations period. In doing so, petitioner appears to conflate equitable *tolling* of the limitations period with an *exception* to the application of the limitations period. This Court will focus its analysis on the exception to the limitations period announced in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). To the extent that petitioner is arguing that he is entitled to equitable tolling rather than an exception to the limitations period, that claim is dismissed as untimely under Rule 60(b). Petitioner already argued that his claim should have been equitably tolled in his previous 60(b) motion filed October 11, 2012. This Court dismissed that motion as untimely, and petitioner has offered no reason for the Court to rule otherwise on this Motion.

when the defendant challenges his underlying conviction rather than the manner in which his previous habeas petition was procured. *See Gonzalez*, 545 U.S. at 531; *Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004).

The Court concludes that petitioner's motion, because it challenges the propriety of the Court's application of the AEDPA's statute of limitations in light of the Supreme Court's decision in *McQuiggin*, attacks the manner in which his habeas petition was dismissed and, thus, is properly treated as a 60(b) motion, not a second or successive habeas petition. *See, e.g.*, *Akiens v. Wynder*, No. 06-cv-5239, 2014 WL 1202746, at *2 (E.D. Pa. Mar. 24, 2014) (concluding that petitioner's 60(b) motion challenging application of statute of limitations in light of *McQuiggin* was not a second or successive habeas petition).

    ii. *Petitioner Has Not Shown Extraordinary Circumstances Sufficient to Warrant Rule 60(b)(6) Relief*

Rule 60(b) permits a party to seek relief from a final judgment under a limited set of circumstances. *See* Fed. R. Civ. P. 60(b). Petitioner does not specify the precise provision of Rule 60(b) under which he seeks relief. As none of the specific grounds for relief stated in Rule 60(b)(1)-(5) apply to petitioner's Motion, the Court construes the Motion as seeking relief pursuant to Rule 60(b)(6), the catch-all provision that allows a court to consider "any other reason that justifies relief."

In order to obtain relief under Rule 60(b)(6), petitioner must show the existence of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Such extraordinary circumstances "rarely occur in the habeas context." *Id.* Moreover, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997).

5

The Court concludes that petitioner has not shown extraordinary circumstances sufficient to warrant relief under Rule 60(b)(6).  Petitioner's Motion is premised upon the Supreme Court's decision in *McQuiggin*, in which the Court held that a claim of actual innocence, if proven, provides an equitable exception to the one-year statute of limitations in 28 U.S.C. 2244(d)(1). *See* 133 S. Ct. at 1928.  *McQuiggin*, however, was decided more than twelve years after this Court's December 13, 2000 Order, and therefore constitutes a "development[] in the law," which "rarely constitute[s]" extraordinary circumstances sufficient for Rule 60(b)(6) relief.  *Agostini*, 521 U.S. at 239.  Petitioner has provided no argument or supporting authority for his contention that the legal development in *McQuiggin* constitutes extraordinary circumstances, and several courts have held otherwise.  *See, e.g.*, *Akiens*, 2014 WL 1202746, at *3 (collecting cases).

The holding of the Supreme Court in *Gonzalez* further undercuts petitioner's position.  The *Gonzalez* petitioner argued that he had shown extraordinary circumstances sufficient to warrant Rule 60(b) relief because his petition, which the U.S. Court of Appeals for the Eleventh Circuit determined was untimely, would have been deemed timely under the later Supreme Court decision in *Artuz v. Bennett*, 531 U.S. 4 (2000).[2]  The Court rejected petitioner's argument, concluding that it was "hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation."  *Gonzalez*, 545 U.S. at 536.

The Court finds these cases persuasive and denies petitioner's 60(b) Motion on the ground that the legal development in *McQuiggin* does not constitute extraordinary circumstances sufficient to warrant Rule 60(b) relief.

---

[2] *Artuz v. Bennett*, 531 U.S. 4 (2000) changed the law in the U.S. Court of Appeals for the Eleventh Circuit as to when a petition is "properly filed" for purposes of tolling the AEDPA statute of limitations.  *See* 28 U.S.C. § 2244(d)(2).

       iii.      *Petitioner Has Not Presented Sufficient Evidence of Actual Innocence*

Notwithstanding the Court's ruling that petitioner has not shown extraordinary circumstances sufficient to warrant Rule 60(b) relief, the Court addresses the evidence presented by petitioner in his submissions. In short, petitioner has not adduced any new evidence sufficient to warrant application of the exception to the statute of limitations established in *McQuiggin* even if *McQuiggin* were applicable, which it is not.

In *McQuiggin*, the Court held that actual innocence, if proven, provides an exception to the one-year statute of limitations in AEDPA. 133 S. Ct. at 1928. The Court noted, however, that such an exception applies only to a "severely confined category" of cases: those where the petitioner produces new evidence sufficient to show that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id.* at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Petitioner's evidence in this case fails to meet the demanding standard of actual innocence set out in *McQuiggin*. Much of petitioner's evidence fails to meet this standard because it is not "new" evidence. *See Schlup,* 513 U.S. at 327-28 (new evidence is "evidence that was either excluded or unavailable at trial"); *Goldblum v. Klem*, 510 F.3d 204, 226 (3d Cir. 2007) ("Evidence is not new if it was available at trial, but a petitioner merely chose not to present it to the jury." (internal quotation marks omitted)). Such evidence includes FBI Agent Peele's trial testimony regarding gunshot residue on petitioner's hands, the gunshot residue report, petitioner's own sworn statement dated November 23, 1992, and the "defense points for charge." 60(b) Mot. at 5.

Moreover, the alleged new evidence petitioner has presented is insufficient to establish that it is more likely than not that no reasonable juror would have convicted him. For instance,

petitioner provides affidavits from Ruth Jimenez and Delia Sanchez and asserts that they "do not corroborate" prosecution witness Elias Jimenez's testimony that he saw petitioner with the murder weapon from Ruth Jimenez's window. The affidavits, however, merely state that Elias Jimenez was in Ruth Jimenez's apartment watching television when the shooting occurred; they do not state that Elias Jimenez could not have seen defendant through the window.[3] *See* 60(b) Mot. at 18, 21. Similarly deficient is the map of the location of the offense, which petitioner obtained from the City of Lancaster. Petitioner argues that Elias Jimenez's testimony — that he saw defendant run into an alleyway on East Mifflin Street — cannot have been true because the map shows that no alleyway exists in that location. The map, however, is insufficiently marked for the Court to determine if an alleyway exists. Even if the Court could so determine, the map is not dated and was requested from the City of Lancaster more than seventeen years after the crime was committed. Accordingly, the Court cannot determine on the basis of the map whether an alleyway existed at the time of the offense. Such evidence is insufficient to establish that it is more likely than not that no reasonable juror would have convicted petitioner.

Petitioner's other proffered evidence is similarly unavailing. Petitioner attaches his trial counsel's testimony at his Post-Conviction Relief Act ("PCRA") hearing, in which trial counsel states that he advised petitioner against testifying on his own behalf at trial because he was concerned about "collateral issues," such as how petitioner was supporting himself and whether petitioner was involved with drugs. Petitioner also attaches a copy of a petition from his trial counsel to the Court of Common Pleas of Lancaster County in which he sought a certificate

---

[3] The Court also notes that the Third Circuit considered these affidavits in denying petitioner's application for permission to file a second or successive habeas petition, concluding that petitioner failed to establish "by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Pridgen] guilty of the underlying offense." Order, *Pridgen v. Klem*, No. 05-cv-1744 (Doc. No. 7, Aug. 2, 2005).

directing the appearances of two witnesses at petitioner's trial. These pieces of evidence, while potentially probative of counsel's trial strategy, are of no probative value whatsoever in establishing defendant's actual innocence. Finally, petitioner provides several police reports, which, he argues, show inconsistencies in various prosecution witnesses' testimony, such as who had the victim's jacket at what time and whether holes at the scene of the crime were bullet holes. Even assuming *arguendo* that the reports evince the inconsistencies petitioner alleges, the Court concludes that the alleged inconsistencies are insufficient to establish that it is more likely than not that no reasonable juror would have convicted petitioner. Accordingly, this case does not fall into the "severely confined category" of cases in which *McQuiggin* provides an exception to the AEDPA statute of limitations even if *McQuiggin* were applicable to this case, and it is not. The Court thus denies petitioner's 60(b) Motion on this ground as well.

### B. Motion for Expert Witness Funds and Ex Parte Hearing

Petitioner moves the Court, pursuant to 18 U.S.C. § 3006A(e), for $13,600 dollars in order to obtain an expert witness for the purpose of proving his actual innocence claim in his 60(b) Motion.

The decision to grant or deny a request for the appointment of an expert under § 3006A(e) is committed to the trial court's discretion. *United States v. Roman*, 121 F.3d 136, 143 (3d Cir. 1997). The defendant has the burden of showing both that the appointment of an expert is necessary for adequate representation and that he is financially unable to afford the expert's services. *United States v. Sanchez*, 912 F.2d 18, 22 (2d Cir. 1990). The test for determining whether an expert's services are necessary is "whether a reasonable attorney would engage such services for a client having independent financial means to pay for them." *United States v. Goodwin*, 770 F.2d 631, 635 (7th Cir. 1985). "[T]o meet this burden, 'a defendant must

demonstrate with *specificity*, the reasons why such services are required.'" *United States v. Pitts*, 346 F. App'x 839, 841-42 (3d Cir. 2009) (quoting *United States v. Gadison*, 8 F.3d 186, 191 (5th Cir.1993) (emphasis in original)).

In his Motion, petitioner argues that the Court should appoint an expert witness for him to use in challenging FBI Agent Peele's trial testimony regarding the Gunshot Residue ("GSR") lab testing in the case. Petitioner claims that an expert is necessary because Agent Peele testified that the GSR lab testing revealed one sample that had elevated amounts of barium and antimony, "but never identified this sample to [the] jury, court, nor defendant." Mot. to Supp. at 2 (Doc. No. 82). According to petitioner, that testimony was incorrect because the results of the GSR report were inconclusive and, therefore, exculpatory. Finally, petitioner argues that the gunshot residue sample with elevated levels of barium and antimony was from his left hand, contradicting the prosecution's theory of the case that petitioner shot the gun with his right hand, and supporting petitioner's theory that the gun was fired while he was trying to take the gun from a friend.

The Court denies petitioner's Motion for Expert Witness Funds. Petitioner fails to detail or even summarize the testimony and other evidence he believes an expert would present. Moreover, assuming *arguendo* that such an expert would testify that the elevated gunshot-residue sample was, as petitioner asserts, inconclusive, such evidence has been deemed to fall "considerably below" *McQuiggin*'s actual-innocence standard. *Sturgis v. Varner*, No. 01-060, 2014 WL 1340411, at *3 (E.D. Pa. Apr. 4, 2014) ("[T]he [gunshot residue] analysis is not conclusive, and we find that this evidence falls considerably below the 'demanding' standard of proving 'actual innocence.'" (quoting *McQuiggin*, 133 S. Ct. at 1928)). The probative value of any such expert testimony would be further diminished in this case because the record reveals

that Agent Peele quite clearly testified that the ratios of barium to antimony in the elevated sample, with which petitioner takes issue, rendered that sample inconclusive.  *See* Mot. to Supp. 21 (ECF. No. 82) ("[T]he amounts of barium and antimony in this case are somewhat elevated . . . . Had the ratios [of barium to antimony] been proper, *which these were off in this case*, then potentially a different result  -- *a different result could've been found on one of the samples in this case.*") (emphasis added).

Petitioner's final argument supporting his request for an expert — that the elevated gunshot residue sample on his left hand corroborates his version of events and undermines the government's version — similarly fails.  Petitioner's affidavit, upon which he relies to evidence his theory of events, does not state that the gun went off in his left hand and therefore the elevated sample does not support his version of events.  *See* Statement of James M. Pridgen, 60(b) Mot. at 14 ("I said put that [gun] away and when he didn't, I went to take the gun from him.  When I pulled the gun from him it went off and the bullet hit Wayne.")  Nor does that sample contradict the testimony of the government witnesses that he fired the gun with his right hand.  As previously discussed, the elevated sample on petitioner's left hand, by petitioner's own admission, was inconclusive.  An inconclusive gunshot residue sample on petitioner's left hand does not contradict the trial testimony that petitioner used his right hand to fire the gun.  Moreover, any such contradiction would merely cast doubt on the circumstantial evidence of petitioner's conviction, and would be insufficient to prove petitioner's actual innocence.  *See Thomas v. Pollard*, No. 06-1126, 2007 WL 2463292, at *7 (E.D. Wis. Aug. 27, 2007) ("Evidence which merely casts doubt on the credibility of witnesses or challenges the strength of

circumstantial evidence is insufficient [to establish actual innocence]."). The Court thus denies petitioner's Motion for Expert Witness Funds and Exparte [sic] Hearing.[4]

### C. Motion for State Court Trial Transcripts and Transcript of Preliminary Hearing

Petitioner moves the Court, pursuant to 28 U.S.C. § 753 and 18 U.S.C. § 3006A(a)(2)(B), for the state court preliminary-hearing and trial transcripts. Petitioner later filed a supplement to his Motion for Expert Witness Funds and Exparte [sic] Hearing, stating that his family members "located the trial transcripts." Mot. to Supp. at 1. Accordingly, the Court denies petitioner's Motion as moot insofar as it requests the state court trial transcript.

The Court also denies petitioner's Motion insofar as it requests the preliminary-hearing transcripts. Petitioner provides no basis for that request other than that "[w]ithout these records Petitioner will be unable to demonstrate the 'miscarriage of Justice', and his innocence." Mot. for State Ct. Trial Tr. at 1 (Doc. No. 60); *see also United States v. Brown*, 443 F.2d 659, 660 (D.C. Cir. 1970) (concluding that provision of transcripts at government expense under 18 US.C. § 3006A(e)(1) requires a showing that the transcripts are necessary to an adequate defense).

### D. Motion for State Court Record

Petitioner filed an additional motion captioned as Motion for State Court Record, again requesting the preliminary hearing and trial transcripts. This Motion is identical to petitioner's motion for State Court Trial Transcripts and Preliminary Hearing discussed above and is denied for the same reasons.

---

[4] The Court denies defendant's request for an expert witness without an ex parte hearing. The Motion sets forth all the factual allegations that could be developed at a hearing. Furthermore, since the Court has determined that these allegations, even if true, do not warrant the appointment of an expert, there are no factual issues for the Court to resolve. Accordingly, an ex parte hearing would serve no purpose.

### E. Motions for Extension of Time

Petitioner has filed nine motions for extensions of time in which to file a reply to the government's Response to his Rule 60(b) Motion. All of the motions, excepting only the last three, were granted. The last three motions sought extensions of time so that petitioner could present in his reply the opinions and report of an expert on the question of gunshot residue. The Court has concluded that the proposed expert testimony on this subject — even assuming that such testimony establishes what petitioner asserts it would establish — is insufficient to prove petitioner's actual innocence. For that reason, petitioner's Motion for Expert Witness Funds was denied. *See supra* Part III.B. Accordingly, the three pending motions for extensions of time to present the opinion of an expert witness are denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court denies petitioner's 60(b) Motion Alleging a Defect in the Integrity of the Federal Habeas Corpus Proceedings, petitioner's Motion for Expert Witness Funds and Exparte [sic] Hearing, petitioner's Motion for State Court Record, and petitioner's Motion for State Court Trial Transcripts and Preliminary Hearing. An appropriate order follows.